CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ANNE O'TOOLE (Bar No. 340469)
(E-Mail: annie_otoole@fd.org)
JAYA C. GUPTA (Bar No. 312138)
(E-Mail: jaya_gupta@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
KENNETH RAY JOHNSON III

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH RAY JOHNSON III,<br><br>Defendant. | Case No. ED CR 24-23-MWF<br><br>**KENNETH RAY JOHNSON III'S PARTIAL OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION FOR PROTECTIVE ORDER** |

Deputy Federal Public Defenders Annie O'Toole and Jaya Gupta, counsel for Defendant Kenneth Ray Johnson III, hereby submit this Partial Opposition to the government's *Ex Parte* Application for a protective order regarding discovery containing confidential informant information, ECF No. 18. The defense does not oppose the entry of a protective order in this case. Rather, the defense opposes three specific provisions to appropriately balance Mr. Johnson's constitutional rights and defense counsel's ethical obligations against any risk of unauthorized disclosure. Attached hereto as Exhibit A is an alternative proposed protective order reflecting Mr.

//

1

Johnson's proposed revisions, which is identical to the government's proposed protective order except as specified in yellow highlight.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  April 12, 2024

By  */s/ Jaya Gupta*

ANNE O'TOOLE
JAYA C. GUPTA
Deputy Federal Public Defenders

Attorneys for KENNETH RAY JOHNSON III

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. LEGAL STANDARD ................................................................................... 1

III. ARGUMENT .............................................................................................. 2

    A.    The Defense *Team* Should Be Permitted To Review CI Materials With Prospective Witnesses Without Requiring Defense Counsel's Presence ........................................................................................................ 2

    B.    Defense Counsel Should be Allowed to Retain CI Materials in Accordance with Her Ethical Obligations. ................................................. 7

    C.    The Defense Should Be Allowed to Apply to the Court to Get an Exemption to the "In-Writing" Requirement If the Particular Facts of the Witness Justify It. ................................................................................. 16

IV. CONCLUSION ......................................................................................... 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*United States v. Bahamonde*,
    445 F.3d 1225 (9th Cir. 2006) ............................................................17

*United States v. Barrow*,
    2:20-cr-00563-VAP, ECF No. 42 (C.D. Cal. Mar. 15, 2021) ......................6, 21

*United States v. Benavides-Schorgi*,
    No. 23-cr-164-JVS, ECF No. 24 (C.D. Cal. Jun. 9, 2023)...............................21

*Brady v. Maryland*,
    373 U.S. 83 (1963)...............................................................................11

*United States v. Bulger*,
    283 F.R.D. 46 (D. Mass. 2012) ............................................................1

*United States v. Calvin*,
    2:22-cr-00134-JLS, ECF No. 26 (C.D. Cal. Jun. 6, 2022) ...................6, 15, 21

*United States v. Cisneros*,
    No. 18-cr-00875-JAK, ECF No. 22 (C.D. Cal. Mar. 13, 2019) ......................21

*United States v. Crump*,
    No. 23-cr-163-JWH, ECF No. 31 (C.D. Cal. May 19, 2023) .................6, 15, 21

*F.T.C. v. Data Med. Cap., Inc.*,
    No. SACV 99-1266AHS(EEX), 2010 WL 1049977 (C.D. Cal. Jan. 15,
    2010) ................................................................................................19

*United States v. Flores*,
    No. 22-cr-00517-CJC, ECF No. 25 (C.D. Cal. Dec. 20, 2022)........................21

*United States v. Ford*,
    514 F.3d 1047 (10th Cir. 2008) ...........................................................19

*United States v. Gibson*,
    No. 21-cr-00139-SVW, ECF No. 28 (C.D. Cal. Jun. 30, 2021) ...................6, 21

*Hickman v. Taylor*,
    329 U.S. 495 (1947)............................................................................14

*United States v. Isais*,
   No. 20-cr-422-JFW, ECF No. 33 (C.D. Cal. May 27, 2021) ...........................15

*James v. Illinois*,
   493 U.S. 307 (1990)..........................................................................................17

*Johnson v. United States*,
   135 S.Ct. 2551 (2015).......................................................................................12

*United States v. Kenney*,
   911 F.2d 315 (9th Cir. 1990) ...........................................................................19

*United States v. Lane*,
   No. CR-12-01419-PHX-DGC, 2013 WL 3716601 (D. Ariz. July 13,
   2013) .................................................................................................................19

*United States v. Luong*,
   No. 22-cr-596-DOC, ECF No. 18 (C.D. Cal. Feb. 24, 2023)..............................7

*Martinez v. Procunier*,
   354 F. Supp. 1092 (N.D. Cal. 1973) ...................................................................5

*United States v. Martinez*,
   No. 21-cr-00101-CJC, ECF No. 166-1 (C.D. Cal. Jul. 29, 2021) ........................7

*United States v. Navarro*,
   No. 22-cr-63-JWH, ECF No. 30 (C.D. Cal. Apr. 19, 2023)....................7, 15, 21

*United States v. Patino et. al.*,
   Case No. 5:18-cr-00250-CJC (C.D. Cal.).......................................................4, 15

*United States v. Pham*,
   No. 20-cr-114-SVW, ECF No. 59 (C.D. Cal. Jan. 20, 2021)..............................6

*United States v. Quintanilla*,
   No. 19-cr-775-FMO, ECF No. 43 (C.D. Cal. Feb. 25, 2020) ........................6, 15

*United States v. Rogers*,
   321 F.3d 1226 (9th Cir. 2003) .........................................................................19

*United States v. Rubier*,
   651 F.2d 628 (9th Cir. 1981) ...........................................................................20

*United States v. Smith*,
   985 F. Supp. 2d 506 (S.D.N.Y. 2013) ................................................................1

iii

*In re Snyder*,
   472 U.S. 634 (1985).................................................................................13

*Washington v. Texas*,
   388 U.S. 14 (1967)..................................................................................17

*United States v. Triefenbach*,
   8:21-CR-133-JVS, ECF No. 31 (C.D. Cal. Dec. 13, 2021) ..............................15

*United States v. Vargas-Aldaco*,
   No. 22-00520-CJC, ECF No. 65 (C.D. Cal. Mar. 21, 2023).........................6, 21

*United States v. Wecht*,
   484 F.3d 194 (3d Cir. 2007) ....................................................................1

**Regulations**

*Formal Opinion Interim No. 19-0004*, THE STATE BAR OF CALIFORNIA,
   *available at*
   https://www.calbar.ca.gov/Portals/0/documents/publicComment/2022/1
   9-0004-Client-File-Release-Retention.pdf...................................................8, 11

*Formal Opinion No. 2001-157*, THE STATE BAR OF CALIFORNIA, *available
   at*
   https://www.calbar.ca.gov/Portals/0/documents/ethics/Opinions/2001-
   157.htm ...............................................................................................7, 8, 11

L.A. Cnty. Bar Ass's Formal Op. 475 (1983), *Available at*:
   https://s3.amazonaws.com/membercentralcdn/sitedocuments/lacba/lacb
   a/0833/2094833.pdf?AWSAccessKeyId=AKIAIHKD6NT2OL2HNPM
   Q&Expires=1712931246&Signature=%2B8xI8EbFpddyt49KQwCVM
   CuCEAk%3D&response-content-
   disposition=inline%3B%20filename%3D"ethics--opinion-
   475%2Epdf"%3B%20filename%2A%3DUTF-
   8%27%27ethics%252D%252Dopinion%252D475%252Epdf&response
   -content-type=application%2Fpdf...................................................................8, 9

L.A. Cnty. Bar Ass's Formal Op. 420 (1983) ............................................................11

**Other Authorities**

Fed. R. Crim. P. 16(d)(1) ................................................................................1

Fed. R. Evid. 801 .......................................................................................19, 20

Fed. R. Evid. 802 ................................................................................................20

Fed. R. Evid. 803 ................................................................................................20

Fed. R. Evid. 807 ................................................................................................20

Federal Rule of Criminal Procedure 16 ................................................................1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The defense generally does not object to the appropriateness of a protective order in this case given the government's use of confidential informants ("CI"). The defense, however, objects to three of the terms proposed by the government to appropriately balance Kennth Ray Johnson III's constitutional rights and defense counsel's ethical obligations against any risk of disclosure of Confidential Informant Materials ("CI Materials") produced in discovery.[1] As discussed in detail below, the defense respectfully submits that the government's *Ex Parte* Application fails to establish good cause for these provisions. Accordingly, the defense asks that the Court sustain its objections and enter the protective order it proposes, attached hereto as Exhibit A.

### II. LEGAL STANDARD

Federal Rule of Criminal Procedure 16 provides, in relevant part, that a court may, "for good cause, deny, restrict, or defer discovery or inspection or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). Good cause for a protective order requires a particularized and specific showing of need. *See United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007). Further, limits imposed by a protective order should be no broader than necessary to accomplish the goals of the protective order. *See United States v. Smith*, 985 F. Supp. 2d 506, 523-24 (S.D.N.Y. 2013).

---

[1] Specifically, the defense objects to the government's proposed provisions: (1) requiring defense counsel's presence (as opposed to the presence of any member of the Defense *Team*) whenever witnesses or potential witnesses are shown CI Materials, ¶ 7(n); (2) requiring that CI Materials be destroyed within 30 days of the conclusion of proceedings or returned to the government, as opposed to being maintained by defense counsel in accordance with her ethical obligations, ¶¶ 7(t), (u); and (3) Paragraph 7(n) as written not permitting defense counsel to seek an exception to the "in writing" requirement when showing Confidential Information to prospective witnesses. *See* Decl. at ¶ 2.

1

### III. ARGUMENT

**A.    The Defense *Team* Should Be Permitted To Review CI Materials With Prospective Witnesses Without Requiring Defense Counsel's Presence.**

The defense objects to proposed provision ¶ 7(n), which requires defense counsel's presence whenever a Defense Team member reviews CI Materials with a prospective witness. The government's justification for this provision is that because "the risk of information spillage is not siloed" in the prison context and because "mishandled information could spread quite ready in a context, prison, where safety concerns are heightened" defense counsel must be present. *See* Gov. EPA at 4-5. The government's argument relies on a series of unsupported assumptions including that (1) prospective witnesses will disseminate CI Materials when the most these witnesses will be allowed to do is temporarily view such information after being informed and agreeing in writing to be bound by the requirements of the protective order, (2) that prospective witnesses are still in prison at USP Victorville when the alleged offense occurred more than three years ago on February 11, 2021, (3) members of the Defense Team cannot be trusted to follow the requirements of the protective order when approaching prospective witnesses with CI Materials, and (4) that defense counsel's presence will be a bulwark to stop the transmission of CI information in the prison context. These faulty assumptions are easily dispelled. Beyond that, such a requirement infringes Mr. Johnson's constitutional right to effective assistance of counsel, to present a defense, and to call witnesses in his favor.

**First,** the government assumes that prospective witnesses will disseminate CI Materials or information contained therein. Such a risk of disclosure is speculative at best. Significantly, prospective witnesses would only be allowed to view the CI Materials after being informed of the protective order's requirements and agreeing in writing to be bound. Practically speaking then, the most a prospective witness would be able to do with CI Materials is briefly view such materials and only in the presence of a

2

member of the Defense Team who would collect any and all notes that the witness might take. They would not be allowed to retain the CI Materials or any notes they make take from those materials. In combination, these provisions are more than adequate to prevent any unauthorized dissemination by prospective witnesses, particularly when the witness knows that their signed agreement to follow the protective order terms may subject them to prosecution for contempt. The government's argument to the contrary fails to account for the substantial protection that these terms provide against the risk of unauthorized disclosure.

Further, the Court should not assume that prospective witnesses are concentrated at USP Victorville thus risking that information spillage will not be siloed. Here, the conduct is alleged to have occurred more than *three years ago* on February 11, 2021. *See* ECF No. 1. Given the significant lapse of time, it is likely that prospective witnesses have already completed their sentence and have been sent home or have been transferred to another Bureau of Prison facility, thus undercutting the primary argument the government advances: that if information is unlawfully disseminated, it will be concentrated in the prison setting.

Third, the government's argument also incorrectly assumes that members of Defense Team, namely investigators, cannot be trusted to follow the requirements of the protective order when they approach prospective witnesses, thus allowing for CI Materials to be unlawfully disseminated. Members of the Defense Team, all of whom (other than experts) work for the Federal Public Defender, are Federal Judiciary employees, and work under the direction of defense counsel, who is an officer of this Court. They have experience working with CI Materials because a significant proportion of cases handled by the Federal Public Defender's Office involve confidential informants. They, thus, are more than capable of reviewing CI Material with prospective witnesses while also ensuring that the requirements of the protective

order are followed.[2] It should speak volumes that the government comes forward with _no_ evidence that staff at the Federal Public Defender's Office have mishandled CI Materials in the absence of a provision requiring defense counsel's presence when such materials are reviewed with prospective witnesses.[3] Staff at the Federal Public Defender's Office have handled cases alleging homicides in prison before, including at Victorville, without any issues. *See United States v. Patino et. al.*, Case No. 5:18-cr-00250-CJC (C.D. Cal.). Indeed, the stipulation and protective order entered in *Patino* did not require defense counsel's presence when approaching prospective witnesses even with confidential informant information. *See id at* ECF Nos. 79, 79-1, 80. Tellingly, there is no evidence there were concomitant disclosures of protected information because of defense counsel's absence.

Finally, it is difficult to see how defense counsel's presence will act as a bulwark against transmission of information by prospective witnesses. If a prospective witness is inclined to disregard the requirements of the protective order notwithstanding a written agreement signed by that person to abide by its requirements, defense counsel's presence will do little if anything to dissuade that person from pursuing that inclination. As a result, there is no good cause justifying such a requirement.

Beyond the lack of good cause, Paragraph 7(n) implicates Mr. Johnson's Sixth Amendment right to effective assistance of counsel, to present a defense, and to call witnesses in his favor. As one court explained with respect to prison regulations specifying that inmate interviews could only be conducted by attorneys of record:

---

[2] If the government had legitimate concerns regarding the suitability of Defense Team members like investigators handling CI Material, then the protective order it proposed would have restricted everyone other than defense counsel from handling CI Materials. It does not.

[3] Moreover, the government's unfounded concerns about members of the Defense Team's purported inability to follow the terms of the protective order are belied by the provisions that allow those very same Defense Team members to handle the CI Materials themselves without defense counsel supervision.

4

> If attorneys of record must interview their clients personally . . . the time spent travelling would necessarily prohibit them from spending as much time working on legal problems. Conversely, if attorneys can send assistants with detailed instructions to interview inmates, they will have more time available to evaluate the contentions raised and prepare the necessary legal documents.  It follows that each inmate-client will receive better legal assistance, thus facilitating his access to the courts. Moreover, attorneys would have more time to serve additional clients who might otherwise have to rely on jailhouse lawyers. The potential benefits to inmates, attorneys and the courts from permitting attorneys to send law students or other paraprofessionals to interview inmates are obvious.

*Martinez v. Procunier*, 354 F. Supp. 1092, 1098 (N.D. Cal. 1973), *aff'd*, 416 U.S. 396 (1974) (finding the prison regulations controlling who may conduct client interviews violated the Fifth and Fourteenth Amendments, enjoining enforcement of such rules, and ordering defendants to formulate new regulations). Thus, unnecessary time spent by counsel solely for the purpose of ensuring compliance with the protective order when approaching prospective witnesses detracts from time that defense counsel could spend preparing other aspects of Mr. Johnson's defense so that his case may be expeditiously resolved.

Further, just a prosecutor has agents to assist it in prosecuting a case, so too does defense counsel have investigators to assist her in rendering effective assistance of counsel and in presenting a defense. To discharge their constitutional duties, defense investigators need the flexibility to speak with witnesses as they become available, which is often on the spot without a pre-arranged appointment. Investigators frequently wait in the field (which can be out of town or out of state) for hours or days at a time attempting to speak with witnesses. It is unrealistic and an undue burden on Mr. Johnson's constitutional rights to present a defense and call witnesses in his favor to require an investigator to wait for defense counsel to be available (or for defense counsel to be with her investigator at all times) in order to show that witness CI Materials, particularly when speaking with that witness may be a spontaneous, one-shot opportunity.

Nor does defense counsel have the time or resources to travel and wait with her investigator for hours or days at a time in order to approach witnesses solely to comply

with this term in the proposed protective order. This concern is particularly acute here when this case stems from an offense is alleged to have occurred at USP Victorville, which is more than 85 miles *one way* from both defense counsel's respective offices in Downtown Los Angeles and in Santa Ana, Decl. at ¶ 3, and involves witnesses who may still be in custody at USP Victorville or at another BOP facility, or who have been returned home, which may be anywhere in the country or even abroad, following the completion of their custodial term. Defense counsel's time should be spent preparing the defense to ensure Mr. Johnson receives effective assistance of counsel, not squandered because the government (without cause) does not trust defense counsel's agents to abide by the requirements of the protective order.

Nor is such a requirement fair. Nowhere in the proposed protective order is the Assistant United States Attorney required to be present during witness interviews involving CI Materials. If the burden is so "minimal" as the government claims, then the government should be required to abide by the same restriction. The defense should not be subjected to any greater burden than the prosecution.

Accordingly, courts have rejected such a requirement in similar cases involving CI Materials.[4] Elsewhere, the government has <u>agreed</u> that witnesses or potential witnesses may review CI Materials with a member of the Defense *Team* without

---

[4] *See, e.g.*, *United States v. Crump*, No. 23-cr-163-JWH, ECF No. 31 at 5 (C.D. Cal. May 19, 2023) (sustaining defense objection to requirement that defense counsel must be present when showing CI Materials to a witness/potential witness); *United States v. Vargas-Aldaco*, No. 22-00520-CJC, ECF No. 65 at 5-6 (C.D. Cal. Mar. 21, 2023) (same in large-scale, multi-defendant drug conspiracy case involving two confidential informants); *United States v. Conception*, 651 F. Supp. 3d 1158, 1163-64 (C.D. Cal. Jan. 17, 2023) (same in case charging drug distribution and firearm trafficking); *United States v. Calvin*, 2:22-cr-00134-JLS, ECF No. 26 at ¶ 6(l) (C.D. Cal. Jun. 6, 2022) (same); *United States v. Quintanilla*, No. 19-cr-775-FMO, ECF No. 43 at ¶ 7 (C.D. Cal. Feb. 25, 2020) (same); *United States v. Barrow*, 2:20-cr-00563-VAP, ECF No. 42 at ¶ 5(m) (C.D. Cal. Mar. 15, 2021) (same); *United States v. Pham*, No. 20-cr-114-SVW, ECF No. 59 at ¶ 4(j) (C.D. Cal. Jan. 20, 2021) (same); *United States v. Gibson*, No. 21-cr-00139-SVW, ECF No. 28 at ¶ 4(j) (C.D. Cal. Jun. 30, 2021) (same).

requiring defense counsel's presence.[5] Accordingly, the Court should sustain the defense objection and enter the defense's alternative provision. *See* Ex. A at ¶ 7(n).

## B.    Defense Counsel Should be Allowed to Retain CI Materials in Accordance with Her Ethical Obligations.

At paragraphs 7(t) and (u) of its proposed protective order the government seeks to compel defense counsel to return all CI Materials to the government or destroy it within 30 days of the conclusion of "appellate and post-conviction proceedings." This provision is highly problematic for a number of reasons including that (1) it conflicts with defense counsel's ethical obligations imposed by the California State Bar, (2) allows *Brady* violations to go undiscovered, and (3) invades the work product privilege.

### (1)    Destruction of CI Materials Is Contrary to Defense Counsel's Ethical Obligations

First, the government's proposed provision is clearly contrary to repeated pronouncements of the California State Bar and the Los Angeles County Bar Association ("LACBA") regarding retention of the client's file in criminal matters for the life of the client. Specifically, California State Bar Formal Opinion 2001-157—which states that it is interpreting California Business and Professions Code §§ 6068(e) and 6149 and Rules 3-700 and 4-100 of the former California Rules of Professional Conduct—prescribes in no uncertain terms that "client files in criminal matters should not be destroyed without the former client's express consent when the former client is alive." *See* Standing Committee on Professional Responsibility and Conduct, *Formal Opinion No. 2001-157*, THE STATE BAR OF CALIFORNIA, *available at*

---

[5] *See*, *e.g.*, *United States v. Navarro*, No. 22-cr-63-JWH, ECF No. 30 at 6(l) (C.D. Cal. Apr. 19, 2023); *United States v. Martinez*, No. 21-cr-00101-CJC, ECF No. 166-1 at ¶ 6(l) (C.D. Cal. Jul. 29, 2021); *United States v. Alonso*, No. 22-cr-00530-DOC, ECF No. 30 at ¶ 7(g) (C.D. Cal. Dec. 15, 2022) (stipulating that members of the Defense Team may review CI Materials with witnesses/potential witnesses); *United States v. Luong*, No. 22-cr-596-DOC, ECF No. 18 at ¶ 6(g) (C.D. Cal. Feb. 24, 2023) (same).

https://www.calbar.ca.gov/Portals/0/documents/ethics/Opinions/2001-157.htm. The State Bar specifically states:

> Files relating to criminal matters may well have future vitality even after judgment, sentence and statutory appeals have concluded. In criminal matters, the attorney cannot foresee the future utility of information contained in the file…it is incumbent on the attorney in a criminal matter to obtain some specific written instruction from the client authorizing the destruction of the file. Absent such written instruction, the attorney should not undertake the destruction of client files on the attorney's initiative.

*Id*. (citing LACBA Formal Opinion No. 420 (1983), attached hereto as Ex. B). Further in Formal Opinion No. 19-0004—an opinion the government claims supports its position[6]—the State Bar again repeats that:

> In closed criminal matters, absent an agreement to the contrary, client files should not be destroyed with a client's express consent while the client is alive. California Penal Code section 1054.9 requires trial counsel to retain a copy of a client's files for the term of imprisonment where the client is convicted of a serious or violent felony resulting in a sentence of 15 years or more. Section 1054.9, however, concerns a criminal defense's access to discovery materials post-conviction in certain cases *and does not address or govern a lawyer's ethical obligations with respect to closed client files. Because files relating to criminal matters may have future vitality even without a conviction, and even after judgment, sentence, and appeals, absent a contrary agreement or client consent, a lawyer should retain the files for the life of the client*.

*See* Standing Committee on Professional Responsibility and Conduct, *Formal Opinion Interim No. 19-0004*, THE STATE BAR OF CALIFORNIA, *available at* https://www.calbar.ca.gov/Portals/0/documents/publicComment/2022/19-0004-Client-File-Release-Retention.pdf (emphasis supplied).

As if that were not clear enough, LACBA reiterates in Formal Op. 475—an opinion the government itself relies on—that:

---

[6] The government seizes on this language—"agreement to the contrary"— apparently to suggest that a protective order ordering destruction can also modify existing defense counsel's ethical obligations to retain the file. *See* Gov. EPA at 7. As the government appears to recognize, "agreement" in this Opinion is an agreement between *the client* and *the lawyer*. Here, Mr. Johnson has not consented to destroy portions of his file nor could he knowingly when he has not yet seen any of the CI Materials because they have not been produced. Decl. at ¶ 4.

8

In the criminal law context, this Committee concluded in Ethics Opinion No. 420 that a public law office must preserve closed client criminal files unless and until the client authorizes the destruction of the file.

[…]

In a criminal matter, the lawyer must maintain the file for the life of the former client, unless authorized by the former client to destroy it or otherwise release it. <u>Cf.</u> Los Angeles County Bar Association Opinion No. 420, <u>supra</u>. Considerations pertaining to the criminal defendant's liberty interest in the proceedings and to the possibility of review of criminal convictions by appeal or writ (even many years after conviction) warrant [sic] especially cautions treatment of criminal case files.

L.A. Cnty. Bar Ass's Formal Op. 475 (1983).[7] In Formal Opinion No. 420, LACBA states that "As an ethical matter, however, it appears clear that the file belongs to the client…this Committee has consistently taken the position that the file, including 'work product' is the property of the client. *Nothing* other than the client's permission appears to limit the duty to preserve this property." *See* Ex. B, Decl. at ¶ 5 (emphasis supplied).

Finally, Rule 1.16 of the <u>*current*</u> California Rules of Professional Conduct explicitly recognizes that a client file should be maintained in a criminal case, and specifies that "[a] lawyer in certain criminal matters may be required to retain a copy of a former client's file for the term of his or her imprisonment." *See* Cal. R. Prof. Conduct, Rule 1.16(e), cmt. 5.

The State Bar's and LACBA's broad prohibitions against the destruction of a client's file while the client is alive without the client's express consent notably <u>*do not*</u> make an exception for files that contain confidential informant information and <u>*do not*</u> treat criminal cases in which there may be a protective order differently from other

---

[7] *Available at*: https://s3.amazonaws.com/membercentralcdn/sitedocuments/lacba/lacba/0833/2094833.pdf?AWSAccessKeyId=AKIAIHKD6NT2OL2HNPMQ&Expires=1712931246&Signature=%2B8xI8EbFpddyt49KQwCVMCuCEAk%3D&response-content-disposition=inline%3B%20filename%3D"ethics--opinion-475%2Epdf"%3B%20filename%2A%3DUTF-8%27%27ethics%252D%252Dopinion%252D475%252Epdf&response-content-type=application%2Fpdf

9

criminal case. While the government construes this as silence, and thus ambiguity on the issue, it is not. The State Bar and LACBA saw fit to include *one* exception to the requirement that a client's criminal file be maintained as long as the client is alive and that is if the client expressly authorizes it. Mr. Johnson has not expressly authorized the destruction of CI Materials in his file, Decl. at ¶ 4, and as a result, paragraphs 7(t) and (u) of the government's proposed protective order would cause defense counsel to violate their ethical obligations to Mr. Johnson if entered.

Instead, the government confuses the issue by claiming that "the California Rules of Professional Conduct expressly recognize that protective orders may modify an attorney's obligation to return client materials" Gov. EPA at 7. This is not correct. Whether defense counsel must give or *return* certain portions of the client's file *to the client* is an entirely different issue than whether defense counsel must *destroy* those portions of the client's file such that no one—not defense counsel nor the client— would have a copy. Rule 1.16(e) upon which the government relies states that "subject to any applicable protective order, non-disclosure agreement, statute or regulation, the lawyer promptly *shall release to the client*, at the request of the client, all client materials and property." Similarly Rule 1.4(d) states that "A lawyer's obligation under this Rule to provide information and documents [to the client] is subject to any applicable protective order, non-disclosure agreement, or limitation under statutory or decisional law." The most these Rules recognize is that counsel may be prohibited by a protective order or other authority from giving or returning sensitive portions of the client's file *back to the client*—a proposition that the defense does not dispute. [8] Neither

---

[8] To be clear, the defense does not dispute that protective orders may validly prohibit defense counsel from giving sensitive information to a client or returning it to the client upon request. Defense counsel has already agreed (1) not to give CI Materials to Mr. Johnson or any member of his family, (2) not to leave Mr. Johnson alone with CI Materials, and (3) that defense counsel will be present whenever CI Materials are being shown to Mr. Johnson. The defense, however, vehemently disputes that it must destroy

of these Rules, however, recognizes that a protective order or any other authority may order defense counsel to *destroy* portions of the client's file such that neither defense counsel nor the client would have a copy. To the contrary, the State Bar in Formal Opinion Nos. 19-0004 and 2001-75 and LACBA in Formal Opinion Nos. 420 and 475 expressly prohibit the defense counsel from destroying any portion of the client's file in a criminal case while the client is alive unless the client expressly agrees. Again, LACBA Formal Opinion No. 420 states that "*Nothing* other than the client's permission appears to limit the duty to preserve this property [the client's file]." *See* Ex. B. The government's arguments to the contrary all fail.

### (2) Requiring Return or Destruction of CI Material Discovery Shields Potential *Brady* Violations and Thwarts Review of Cases If There Are Changes in Sentencing Procedure

The government claims that "no countervailing reason" to allow defense counsel to retain CI Material discovery consistent with their ethical obligations. Gov. EPA at 6. Again, this is not true. As expressly and repeatedly recognized by the California State Bar and LACBA, litigation in criminal cases often arises long after what might normally be considered "the conclusion of appellate and post-conviction proceedings." Notwithstanding the clear mandates of *Brady v. Maryland*, 373 U.S. 83 (1963), it has often occurred that a *Brady* violation is not discovered until well after the conclusion of "appellate and post-conviction proceedings." To establish a *Brady* violation, defense counsel would need to compare the discovery he or she received before or during trial against exculpatory/impeaching evidence in the prosecutor's possession. Forcing defense counsel to return or destroy CI Materials may shield *Brady* violations from ever being discovered as the defense would have no ability to discern whether

the CI Materials in Mr. Johnson's file as this would cause defense counsel to violate their ethical obligations to their client in this case where the stakes are extraordinarily high.

11

exculpatory/impeaching evidence was produced or not without having access to the full set of discovery (including CI Materials) as well as its notes. Here, such a concern is paramount insofar as this case involves multiple confidential informants who are likely other prisoners at USP Victorville who may have received or will receive in the future benefits for their cooperation. It is crucial that the defense be allowed to retain the CI Materials to ensure that any *Brady* violations are brought to light, particularly given the seriousness of Mr. Johnson's charges and the severity of sentence he faces if convicted and particularly where multiple confidential informants potentially stand to benefit from their cooperation. The government's purported compromise that "[i]f defense counsel needs to access CI Materials after the conclusion of litigation, the government can reproduce those materials at that time," *see* Gov. EPA at 6-7, at is no compromise at all. The government should not be in the sole position of furnishing (or not furnishing as it, in its *sole discretion*, sees fit) the very materials that would establish its violation of *Brady* with *no ability* by the defense to independently validate whether such materials were produced when required.

As another example, recently the First Step Act, *Johnson v. United States*, 135 S.Ct. 2551 (2015), the Fair Sentencing Act, and retroactive amendments to the U.S. Sentencing Guidelines have all required full-scale review of thousands of cases— including the facts and discovery in those cases—to determine whether a client could be harmed by filing a motion for relief (if, *inter alia*, such a motion could lead to the reinstatement of more serious charges that the government would be able to prove). In reviewing any case, it is crucial that defense counsel is able to review the entire file, including information subject to a protective order. If discovery (in addition to defense counsel's or defense team members' notes) is missing from the file, that creates obvious complications to undertaking such a review.

Given that defense counsel would be bound to secure the CI Materials in their possession pursuant to other terms in the protective order—terms to which the defense has readily agreed—the government offers no compelling reason to require defense

12

counsel to take the ethically-prohibited step of destroying portions of the case file, in contravention of the Rules of Professional Conduct, Opinions issued by the California State Bar and LACBA, and the Business and Professions Code. Specifically, given the provisions (1) prohibiting Defense Team members from disseminating protected materials to anyone other than in conformity with the strict requirements of the protective order (¶¶ 7(o), (j)) and from using those materials in any way other than in connection with the instant case (¶¶ 7(q), (t)), and (2) requiring that the Defense Team maintain all Confidential Information "safely and securely" including by not allowing such information "to be outside the Defense Team's offices, homes, vehicles, or personal presence" or "unattended in any vehicle" (¶ 7(o)), the government cannot fairly contend that continued retention of the CI Materials by defense counsel subject to the strict conditions of the protective order "creates unnecessary risk that CI materials may be lost or disclosed to third parties, increasing the safety risks to cooperating witnesses." Gov. EPA at 6. As employees of the Federal Judiciary and as officers of this Court, defense counsel should be trusted to maintain their files in accordance with the protective order's terms. Attorneys at the Federal Public Defender's Office are officers of this Court who "like the court itself, [is] an instrument or agency to advance the ends of justice." *In re Snyder*, 472 U.S. 634, 644 (1985). There is simply no basis to conclude that defense counsel, as officers of this Court, and their staff would not strictly comply with the provisions of the protective order entered in this case. *See Conception*, 651 F. Supp. 3d at 1163 ("'[i]t is not to be presumed ... that a sworn officer of a court would ... disregard [the officer's] duty' or 'subvert the ends of justice.'"). The government should not be viewed or treated as occupying a position of ethical superiority to the defense such that only it can be trusted to maintain the file.[9]

---

[9] Should the Court overrule the defense objection and require that the CI Materials be returned to the government, the defense respectfully requests the protective order include a term prohibiting the government from destroying, opening,

### (3)     The Government's Proposed Provision Would Allow It to Invade the Work Product Doctrine

Pursuant to paragraph 7(p) of the government's proposed protective order, defense counsel and Defense Team member notes, i.e., defense work product, would become subject to the protective order terms governing Confidential Information. Thus, by imposing paragraphs 7(t) and (u), the defense would be required either to destroy its own work product or turn it over to the government so that it will not be destroyed. If defense counsel elects the latter, nothing in the government's proposed protective order prohibits it from accessing defense work product and invading the work product privilege. While the government may conceive of this as simply about returning CI Materials given to the defense by the government, it is not. Instead, the proposed provision impacts defense counsel work product and would require either its destruction or that it be given to the government. As discussed above, authorities from the State Bar and LACBA prohibit the destruction of the client file, which includes defense work product. *See* Section III.B.1; Ex. B. As to turning over defense work product to the government, our legal system does not permit an adversary to invade the work product privilege absent a concrete showing of extraordinary need. *See Hickman v. Taylor*, 329 U.S. 495, 511-512 (1947) ("the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production").

---

reading, reviewing, modifying or otherwise accessing in anyway the materials returned by the defense without further order of the Court.

14

1

2

3

### (4) Courts in this District Have Routinely Allowed Defense Counsel to Retain CI Materials Consistent with Their Ethical Obligations

4    Contrary to the government's claim that "[c]ourts in this district…routinely enter

5   protective orders with the same 'return or destroy' language," courts in this District

6   routinely have permitted defense retention of CI Materials in accordance with defense

7   counsel's ethical obligations.[10]

8    Moreover, the government has previously _stipulated_ to allow the defense to

9   retain CI Material consistent with its ethical obligations in very serious cases,[11]

10   including in a recent first degree murder case involving a confidential informant

11   stemming from a homicide that occurred at FCI Victorville II. *See United States v.*

12

---

13   [10] *See*, *e.g.*, *United States v. Navarro*, No. 22-cr-63-JWH, ECF No. 30 at 6(l)

14   (C.D. Cal. Apr. 19, 2023); *United States v. Crump*, No. 23-cr-163-JWH, ECF No. 31 at 5 (C.D. Cal. May 19, 2023); *Conception*, 651 F. Supp. 3d at 1165 (sustaining defense

15   objection to term requiring defense counsel to either destroy or return CI Materials); *United States v. Triefenbach*, 8:21-CR-133-JVS, ECF No. 31 at ¶ 4(q) (C.D. Cal. Dec.

16   13, 2021) (modifying protective order to provide that "Defense counsel may retain CI

17   Materials after the conclusion of all litigation consistent with the California Rules of Professional Conduct"); *United States v. Calvin*, 2:22-cr-00134-JLS, ECF No. 26 at ¶

18   6(r) (C.D. Cal. Jun. 6, 2022) (sustaining defense objection and ordering that the defense

19   may retain CI Materials in accordance with the California Rules of Professional Conduct and the California Business & Professions Code); *United States v. Quintanilla*,

20   No. 19-cr-775-FMO, ECF No. 43 at ¶ 12 (C.D. Cal. Feb. 25, 2020) (sustaining defense

21   objection to the return or destroy provision in drug conspiracy case involving confidential informants); *United States v. Isais*, No. 20-cr-422-JFW, ECF No. 33 at ¶

22   4(n) (C.D. Cal. May 27, 2021) (ordering that the defense may retain CI Materials on a

23   secure server).

24   [11] *See*, *e.g.*, *United States v. Domingo*, No 19-cr-313-SVW, ECF No. 30 at ¶ 8

25   (C.D. Cal. Jul. 3, 2019) (stipulating that the defense may retain CI Materials in case charging defendant with providing material support to terrorists and attempted use of

26   weapon of mass destruction); *United States v. Alonso*, 22-cr-00530-DOC, ECF No. 30

27   at ¶¶ 7(m), (n) (C.D. Cal. Dec. 15, 2022) (stipulating that the defense may retain CI Materials in case involving multiple defendants, firearm and drug trafficking on a large

28   scale).

15

*Patino et al.*, Case No. 5:18-cr-00250-CJC, ECF No. 79 at ¶ 9 (C.D. Cal. Jun. 14, 2019) (stipulating that "To the extent that counsel must retain beyond this period any discovery containing the PROTECTED INFORMATION to fulfill his or her ethical obligations, that discovery shall be kept in a safe and secure location."). Accordingly, the defense asks the Court to sustain its objection and enter its proposed alternative. *See* Ex. A at ¶¶ 7(t).

## C.   The Defense Should Be Allowed to Apply to the Court to Get an Exemption to the "In-Writing" Requirement If the Particular Facts of the Witness Justify It.

Defense counsel has already stipulated that before showing CI Materials to prospective witnesses, the Defense Team would inform those witnesses of the requirements of the protective order and get their agreement in writing to be so bound. *See* Decl. at ¶ 2. Defense counsel, however, asked the government for a very narrow compromise: that the defense may apply to the Court for an exemption if the particular circumstances of the witness warranted an *oral* agreement instead. *Id*. The government refused. The Court should permit defense counsel to apply for exception if and when one becomes necessary to ensure that Mr. Johnson's constitutional right to call witnesses in his favor is not infringed.

First, the in-writing requirement burdens the defense and may be a dispositive reason why a witness will not speak with defense investigators. It is well known that witnesses are reluctant to speak to the defense, and that attempting to speak with witnesses is frequently a delicate, one-shot opportunity. *See Conception*, 651 F. Supp. 3d at 1164 ("The task of securing information or cooperation from witnesses is already challenging. Even 'a reasonably diligent defense counsel' is often unable 'to extract all the favorable evidence'—or, for that matter, any evidence—that 'a defense witness possesses. Sometimes, a defense witness may be uncooperative or reluctant.'") (citations omitted). Needless to say, witnesses are likely to be even more dissuaded from speaking with the defense if they are asked to sign a copy of the protective order–

–a multi-page document filled with legalese that a lay person is unlikely to understand. This infringes Mr. Johnson's constitutional right to present a defense.

The burden imposed on the defense by the in-writing requirement is not minimal, as the government attempts to suggest. *See* Gov. EPA at 10. This is particularly the case in the realm of *indigent* defense where witnesses (like defendants) are low/lower income, may suffer from mental health and/or substance use issues, are not well-educated or sophisticated, and who cannot afford to hire their own attorney to advise them on the document they are being asked to sign. Unlike the government, no one on the defense team has a persuasive authority of a law enforcement badge or the ability to confer immunity, decline prosecution, or dangle a favorable sentencing recommendation to persuade a reluctant witness to speak with the defense. Moreover, requiring the defense to obtain a prospective witness's written agreement puts defense counsel in the difficult position of potentially being asked to give legal advice to a prospective witness, whom that counsel does not represent, about the legal ramifications of the document the Defense Team would have to ask the prospective witness to sign. This can easily lead to the misimpression that the Defense Team is working with the government and collecting information on its behalf, a view already held by many marginalized communities. All of this chills witness participation in defense cases.

Additionally, Courts generally disfavor rules that hinder a defendant's ability to call witnesses in his favor or which give the prosecution unencumbered access to a witness but hamper defense access. *See James v. Illinois*, 493 U.S. 307, 314-15 (1990) (holding that a prosecutor cannot impeach a defense witness with illegally obtained evidence because doing so would likely have a chilling effect on the defendant's ability to call witnesses in his favor); *Washington v. Texas*, 388 U.S. 14, 23 (1967) (holding that a Texas law that permitted the State to call a co-defendant for its case, but not to afford the same right to the defense violated the Sixth Amendment); *United States v. Bahamonde*, 445 F.3d 1225, 1228-29 (9th Cir. 2006) (reversing conviction after

holding that it was fundamentally unfair and constitutional error to require the defense to follow a Department of Homeland Security regulation requiring it to set forth in writing the nature and relevance of testimony it sought from a DHS employee without requiring the same from the government, and for the district court to exclude testimony from the DHS case agent when the defendant failed to comply with that regulation).

Because of this, the defense should be permitted to apply to the Court for an exception to the in-writing requirement and instead be required to obtain an oral agreement to be bound by the terms of the protective order (with the defense to keep a contemporaneous written log) if the circumstances of a particular witness show that a written agreement may hinder Mr. Johnson's constitutional right to call witnesses in his favor.

An oral agreement would impress upon the witness the importance of safeguarding Confidential Information and would be enforceable—the primary concerns that the government raises. Indeed, "that witnesses would disregard their obligations upon only an oral rather than a written agreement is pure speculation." *Conception*, 651 F. Supp. 3d at 1164. Moreover, numerous other terms to which the defense has *already agreed* further ensure that no unlawful dissemination of protected Confidential Information by witnesses will occur if there is an oral agreement. Specifically, the defense has already agreed that (1) personal identifying information of can be redacted, (2) the Defense Team will only review Confidential Information with a witness when a Defense Team member is present, (3) the Defense Team will not allow a witness to keep any Confidential Information, and (4) the Defense Team will not allow a witness to keep any notes containing information from Confidential Information. These terms must be considered in conjunction with the requirement that the Defense Team obtain an oral agreement that the witness agrees to be bound by the protective order's terms. Practically speaking, what this all means is that after witnesses have been advised of the protective order's terms and have agreed to be bound, witnesses will only be allowed to temporarily *view* Confidential Information (none of

which will have PII), and will only be allowed to do so in the presence of a member of the Defense Team. An oral agreement by witnesses along with a contemporaneous written log of everyone who has so agreed is more than sufficient to prevent any unauthorized disclosure of Confidential Information by witnesses, particularly when it will be in conjunction with other provisions that prevent witnesses from doing anything other than temporarily viewing the redacted Confidential Information.

Further, an oral agreement would be enforceable. ***First***, the Defense Team's advisement of the protective order's terms to the witness is not hearsay because it would not be offered for its truth, but for its effect on the listener. *See* Fed. R. Evid. 801(c)(2). Courts in this Circuit have routinely held that "an out-of-court statement introduced to prove that the person to whom the statement was made had knowledge of something is not hearsay." *See United States v. Lane*, No. CR-12-01419-PHX-DGC, 2013 WL 3716601, at *2 (D. Ariz. July 13, 2013) (collecting cases); *see also United States v. Kenney*, 911 F.2d 315, 319 (9th Cir. 1990) (prosecutor's testimony regarding his statements to witness's attorney that immunity would not be offered was admissible as non-hearsay to show witness had no motive to lie); *United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003) (portion of criminal complaint filed against creator of Ponzi scheme admissible to show that the defendant referral agent, who had received a copy of the complaint, was on notice of the possibly fraudulent scheme).

***Second***, the witness's statement to the Defense Team that he or she agreed to be bound by the protective order's terms is also admissible on several grounds. To the extent the statement is being offered for its truth against the witness, it constitutes an opposing party's statement and is not considered hearsay. *See* Fed. R. Evid. 801(d)(2)(A); *United States v. Ford*, 514 F.3d 1047, 1052 n.5 (10th Cir. 2008) (statements of contemnor contained in declaration of IRS officer admissible under FRE 801(d)(2)); *see also F.T.C. v. Data Med. Cap., Inc.*, No. SACV 99-1266AHS(EEX), 2010 WL 1049977, at *28 (C.D. Cal. Jan. 15, 2010) (sales pitches made by contemnor company admissible under FRE 801(d)(2)(D)). If somehow it were hearsay, it qualifies

for exceptions to the hearsay rule as a present sense impression and as a statement of the putative contemnor's then-existing state of mind—that he or she understood the protective order and, at that time, intended to comply with its restrictions. *See* Fed. R. Evid. 803(1); Fed. R. Evid. 803(3). Finally, it would also be admissible as a statement of independent legal significance, which is not considered hearsay, to show the putative contemnor was bound by the requirements of the protective order. *See* Fed. R. Evid. 801(c); *see also United States v. Rubier*, 651 F.2d 628, 630 (9th Cir. 1981).

**Third,** the contemporaneous written log maintained by the defense by all witnesses who have agreed to be bound by the protective order terms would be admissible under several exceptions to the rule against hearsay, Fed. R. Evid. 802. A contemporaneously kept log would constitute a record of a regularly conducted activity under Fed. R. Evid. 803(6) insofar as it would meet each of the enumerated requirements of that exception: it was made at or near the time by someone with knowledge, *i.e.*, the defense team member who met with the witness and putative contemnor; in the course of a regularly conducted activity, *i.e.*, the investigation of a criminal case; in the regular practice of that activity, *i.e.*, in light of the protective order's directive to maintain a log; the Defense Team members would be qualified to provide the required certification; and the opponent would not be able to show the log's preparation indicates a lack of trustworthiness insofar as Defense Team Members act at the direction of defense counsel, who are officers of the court, and who are acting pursuant to a court order (*i.e.*, the protective order). For similar reasons, the log would also meet the requirements of the residual exception to the rule against hearsay. *See* Fed. R. Evid. 807.

Recognizing this, numerous courts within this District have rejected the "in writing" provision, including in cases involving confidential informants or cooperating witnesses, and have replaced it with a less restrictive, but still protective requirement

that the defense team obtain an oral agreement and keep a written log. [12] And notably in

*Patino*, a similar homicide case occurring at FCI Victorville, the government stipulated

to allowing the defense to get either an oral or written agreement when approaching

witnesses. *See* Case No. 5:18-cr-00250-CJC, ECF No. 79-1 at ¶ 5 (C.D. Cal. Jun. 14,

2019) (providing that "Before disclosing facts or other information derived from the

---

[12] *See*, *e.g.*, *Conception*, 651 F. Supp. 3d at 1164-65 (sustaining defense objection to in-writing requirement in a drug and gun case involving a confidential informant); *United States v. Vargas-Aldaco*, No. 22-00520-CJC, ECF No. 65 at 7-8 (C.D. Cal. Mar. 21, 2023); *United States v. Flores*, No. 22-cr-00517-CJC, ECF No. 25 (C.D. Cal. Dec. 20, 2022) (rejecting "in writing" requirement for PII Materials in a bank fraud case); *United States v. Benavides-Schorgi*, No. 23-cr-164-JVS, ECF No. 24 at ¶ 4(k) (C.D. Cal. Jun. 9, 2023) (rejecting in-writing requirement and imposing obligation to keep a contemporaneous log in a distribution of fentanyl resulting in serious bodily injury case); *United States v. Triefenbach*, No. 21-cr-00133-JVS, ECF No. 31 at ¶ 4(k) (C.D. Cal. Dec. 13, 2021) (eliminating the "in writing" requirement for CI Materials in a gun and drug case); *United States v. Barrow*, No. 20-cr-00563-VAP, ECF No. 42 at ¶ 5(m) (C.D. Cal. Mar. 15, 2021) (same in a narcotics distribution case); *United States v. Calvin*, No. 22-cr-00134-JLS, ECF No 26 at ¶ 6(l) (C.D. Cal. Jun. 6, 2022) (rejecting "in writing" requirement for CI Materials and directing the defense to keep a log of witnesses who agreed to be bound by the protective order in a drug case); *United States v. Lam*, No. 20-cr-00283-FMO, ECF No. 30 at ¶ 6 (C.D. Cal. May 14, 2021) (eliminating the "in writing" requirement for PII Materials in an unauthorized use of access device and aggravated identity theft case, and directing defense to keep a log of witnesses who agree to be bound by the protective order, although making clear that the defense could assert any applicable privileges over the production of the log); *United States v. Albertson*, No. 18-cr-712-DMG, ECF No. 24 (C.D. Cal. Sept. 3, 2019) (rejecting "in writing" requirement for PII Materials in case alleging unauthorized use of access devices and aggravated identity theft (along with other charges) and requiring the defense team to maintain a written log); *United States v. Cisneros*, No. 18-cr-00875-JAK, ECF No. 22 at ¶ 4(g) (C.D. Cal. Mar. 13, 2019) (eliminating the "in writing" requirement for PII in a bank fraud and aggravated identity theft case, and directing defense to keep a log of witnesses who agreed to be bound by the protective order, although making clear that the defense could assert any applicable privileges over the production of the log); *United States v. Walsh*, No. 21-cr-00068-SB, ECF No. 28 at ¶ 4(k) (C.D. Cal. Mar. 29, 2021) (eliminating the "in writing" requirement for PII and directing defense to keep a log of witnesses who agreed to be bound by the protective order).

21

PROTECTED INFORMATION, however, any witness or potential witness must be informed of, and agree to be bound by, the requirements of this Protective Order."). Again, there is no evidence of a concomitant unauthorized disclosure of protected information as a result of an oral rather than a written agreement.

Thus, all the defense asks at this juncture is to be allowed to apply to the Court for an exception to the in-writing requirement if the circumstances of a particular witness warrant it. Accordingly, the defense asks the Court to enter its proposed alternative provision. *See* Ex. A at ¶ 7(n).

## IV.CONCLUSION

For the foregoing reasons, Kenneth Ray Johnson III respectfully asks the Court to sustain his objections, deny the government's Ex Parte Application, and enter the protective order attached as Exhibit A.

## DECLARATION OF COUNSEL

I, Jaya C. Gupta, hereby state and declare as follows:

1.      I am a Deputy Federal Public Defender employed by the Office of the Federal Public Defender for the Central District of California. I am admitted to the State Bar of California and am admitted to practice before this Court. I have been assigned to represent Kenneth Ray Johnson III in the above-entitled action.

2.      I notified government's counsel by email on March 29, 2024 of Mr. Johnson's objections to the proposed protective order including (1) requiring defense counsel's presence (as opposed to the presence of any member of the Defense Team) whenever witnesses or potential witnesses are shown CI Materials and (2) requiring that CI Materials be returned or destroyed within 30 days of the conclusion of proceedings or returned to the government, as opposed to being maintained by defense counsel in accordance with her ethical obligations. While I stipulated to the government's proposed "in writing" requirement when approaching prospective witnesses with protected discovery, I asked to include an exception that if there is a specific witness the defense believed it needed to relax the in writing requirement for, the defense could apply to the Court to allow an oral agreement.

3.      I work at the Federal Public Defender's Office in Santa Ana, California. My colleague, Annie O'Toole, who is also assigned to this case works at Federal Public Defender's Office in Downtown Los Angeles. When I have calculated the distance to USP Victorville from our respective offices using Google Maps, Google Maps reflects that it is approximately 85 miles one way from my office and 94 miles one way from Ms. O'Toole's office.

4.      Mr. Johnson has not consented to the destruction of any portion of his client file.

5.      Attached hereto as Exhibit B is a true and correct copy of Los Angeles County Bar Association's Formal Opinion No. 420. Because the opinion is not posted on LACBA's website, on April 12, 2024 I emailed LACBA requesting a copy of this

1

opinion. Exhibit B is the opinion that I received that same day in response to my request.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: April 12, 2024          /s/ Jaya C. Gupta

                              JAYA C. GUPTA
                              Deputy Federal Public Defender

2